UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| RUTH ANN HOOVER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 1:16-CV-427-TLS |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Ruth Ann Hoover seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her Social Security Disability benefits and erred by failing to give due weight to her treating physician's opinion and by overemphasizing the Plaintiff's ability to perform daily living activities.

**BACKGROUND**

On December 7, 2012, the Plaintiff filed her third Title II application for a period of disability and disability insurance benefits, alleging disability beginning on February 22, 2006. (R. 11.) Her claim was denied initially on April 30, 2013, and upon reconsideration on July 17, 2013. (*Id.*) On March 4, 2015, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ), along with her husband, Clovis Hoover, and sister, Vickie Napier. (*Id.*) Marie N. Kieffer, a vocational expert, also appeared and testified at the

hearing. (*Id.*) On June 15, 2015, the ALJ denied the Plaintiff's application, finding she was not disabled prior to her date last insured, March 31, 2012. (R. 11–23.) On October 21, 2016, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–3.)

On December 20, 2016, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA from her alleged onset date, February 22, 2006, to her date last insured, March 31, 2012. (R. 13.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including a history of chronic neck pain status post

fusion surgery with chronic headaches; joint arthralgia/arthritis; depression; anxiety disorders (general anxiety disorder and/or post-traumatic stress disorder (PTSD)); and methamphetamine abuse/dependence. (R. 13.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work and that the impairments had lasted for at least twelve months as required under the statute. (*Id.*) The ALJ found that the Plaintiff's other alleged or diagnosed impairments, including bilateral carpal tunnel syndrome, heart problems, rheumatic fever, a left knee fracture, and obsessive compulsive disorder (OCD), were not severe impairments because they either did not significantly limit the Plaintiff's physical or mental ability to do basic, work-related activities, did not manifest or were not diagnosed until after her date last insured, or had not been diagnosed at all. (R. 14.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except:

> with only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; and, needs to avoid concentrated exposure to loud noise and bright flashing lights. Mentally, the claimant cannot understand, remember, or carry out detailed or complex job instructions, but can perform simple, repetitive tasks on a sustained basis (meaning eight hours a day/five days a week, or an equivalent work schedule); needs work at a flexible pace (where the employee is allowed some independence in determining either the timing of different work activities, or pace of work); and only casual, superficial interactions with others, including supervisors, coworkers, and the general public.

(R. 16.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled from her alleged onset date to her date last insured. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective symptoms and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (*Id.*) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (R. 18.) The Plaintiff, the Plaintiff's sister, and the Plaintiff's daughter testified that "these impairments affect [her] ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, use her hands, remember, complete tasks, concentrate, understand, follow instructions, and get along with others." (R. 17.) The Plaintiff testified that "she had ten out of ten neck pain, daily headaches, numbness in her thumbs, as well as left knee and hip pain, that limited her to no lifting or carrying things, sitting for five minutes at one time, standing for five minutes at one time, and walking for five minutes at one time." (*Id.*) She also claimed that she had "memory and concentration problems, as well as extremely limited activities of daily living." (*Id.*) Regarding

her mental health, the Plaintiff claimed a "history of abuse, anxiety, depression, avoidant behaviors, intrusive thoughts, nightmares, insomnia, decreased motivation, social isolation/withdrawal, racing thoughts, loss of energy and pleasure, poor concentration, weight loss, hallucinations, homicidal/suicidal ideation, and delusions." (*Id.*)

The ALJ concluded that the Plaintiff's subjective testimony was not supported by the objective medical evidence or treatment records, and thus, the ALJ discounted the Plaintiff's subjective symptoms, finding the Plaintiff not credible. (R. 34–35.) The ALJ noted that in some instances, the severity of her conditions that she reported to her providers was inconsistent with the severity she claimed. In other instances, the ALJ noted that she "exhibited drug seeking behaviors, suggesting a secondary motive for her reported pain levels that undermine the veracity of her pain complaints." (R. 18.) Because "the objective findings in the record [did] not support the claimant's (or family members') allegations of disabling symptoms" the ALJ found that "she remained capable of performing work within the limitations set forth herein." (R. 19.) The ALJ also found that the Plaintiff's "activities of daily living also suggest[ed] [she] was more functional than her allegations would convey." (*Id.*) In support, the ALJ noted that the Plaintiff was "capable of managing her personal care independently (albeit with pain), washing laundry, driving, shopping, managing money, playing Bingo, spending time with family, maintaining a marriage for over twenty years, and getting along with authority figures." (*Id.*)

Turning to the objective medical evidence, the ALJ discussed the weight given to various medical sources. The ALJ gave significant weight to the opinion of consultative examiner Dr. Wa'el Bakdash, some weight to the opinions of the state agency medical consultants, Drs. M. Brill and F. Lavallo, little weight to treating provider Dr. David Ringel, little weight to the claimant's vocational consultant, Christopher Young, little weight to the opinions of the state

5

agency mental health providers, Drs. William Shipley and Ken Lovko, little weight to the third party function reports and testimony from family members, and little weight to the various GAF scores in the record. (R. 20–21.)

The Plaintiff has past relevant work as a brake assembler, which the vocational expert indicated was skilled employment. (R. 21.) Thus, the ALJ concluded that the Plaintiff was not capable of performing any past relevant work. (*Id.*) However, relying on the vocational expert's testimony, the ALJ found that "through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. 22.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act from her alleged onset date to her date last insured. (R. 23.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. The court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the ALJ placed undue weight on her ability to conduct daily living activities. The Seventh Circuit has emphasized that there are "critical differences between activities of daily living and activities in a full-time job" including flexibility in scheduling,

possible help from family members, and lack of minimum performance standards; and "[t]he failure to recognize these differences is a recurrent . . . feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

The Commissioner argues that the ALJ did not equate the Plaintiff's ability to perform daily activities against her ability to hold a full time job, but rather looked to the Plaintiff's ability to perform daily activities only to evaluate her credibility regarding the intensity, persistence, and limiting effects of her symptoms. The Commissioner correctly notes that an individual's daily activities are among the factors that an ALJ must consider in making such a determination. *See Craft*, 539 F.3d at 660.

However, the ALJ failed to consider the modifications and help that the Plaintiff required in order to complete the referenced daily activities. For example, the Plaintiff testified that her husband did all of the household chores, that her husband and her mother did the cooking, that her daughter-in-law did the shopping, and that her mother-in-law either did the laundry herself or helped the Plaintiff with the laundry. (R. 75–76.) She stated that one of her sons had to help take care of her other son and also help with the cooking (R. 268–69). Thus, the ALJ "ignored [the Plaintiff's] qualifications as to *how* [she] carried out those activities." *Craft*, 539 F.3d at 660 (emphasis in original). Courts have repeatedly found fault with decisions where the ALJ noted that the claimant could perform daily activities but failed to examine the physical or mental consequences of performing those activities and/or the claimant's need for assistance or modifications. *See, e.g.*, *Sneed v. Berryhill*, No. 2:16-CV-195, 2017 WL 4325303, at *3 (N.D. Ind. Sept. 29, 2017) ("If the ALJ wishes to hold Plaintiff's daily activities against her, he must . . . discredit Plaintiff's claims of how much her children help with the activities."); *Herrold v. Colvin*, No. 2:13-CV-360, 2015 WL 1243293, at *6 (N.D. Ind. Mar. 17, 2015) ("[T]he Seventh

Circuit has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal hygiene, children, or household chores.") (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)); *Blow v. Astrue*, No. 1:11-CV-293, 2012 WL 3233621, at *9 (N.D. Ind. Aug. 6, 2012) (finding improper reliance on daily activities when others performed almost all of the household chores and any activities the claimant could perform were at a slower pace with frequent breaks); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 248–249 (6th Cir. 2007) (finding fault where the ALJ "fail[ed] to examine the physical effects coextensive with [the] performance" of daily activities and "failed to note or comment upon the fact that [the claimant] receive[d] assistance of many everyday activities and even personal care from her children").

To the extent that the ALJ based its credibility determination on the Plaintiff's ability to engage in daily living activities without taking into account the qualifications on the Plaintiff's ability to perform them, the Court remands this case to the ALJ. Because the Court is remanding on this issue, the Court need not consider the remainder of the parties' arguments.

## CONCLUSION

For the reasons stated above, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order.

SO ORDERED on November 16, 2017.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT